# UNITED STATES
### *v.*
## ANTONIO CABAÑAS ET AL.

---

San Juan, Equity, No. 1026.

#### DEFAULTS BY POSTMASTER.

Trust Fund—Identification.
>    1. So long as a trust fund can be followed it can be claimed by the owner until a bona fide purchaser is involved.

Trust Fund—Federal Treasury.
>    2. There can be lien on money traced into the Treasury of the United States. This can be reached only by act of Congress.

Opinion filed March 22, 1920.

NOTE.—For authorities discussing the question as to identifying misapplied trust funds to follow and recover them, see note in L.R.A.1916C, **21.**

*Mr. Miles M. Martin,* District Attorney for the Government.

*Messrs. Parra & Perez Marchand* for defendants.

HAMILTON, Judge, delivered the following opinion:

The pleadings and evidence in this case develop a state of facts which could hardly occur outside of Porto Rico. Defendant Tomas Torres is a hard-working but almost illiterate man living near Jayuya, and he employed defendant Cabañas as his bookkeeper. While it is denied that Cabañas was more than a clerk, in point of fact he seems to have handled all the money transactions of Torres, including writing letters, signing checks, and the like. Torres seems hardly to have done anything except make the money which Cabañas handled for him.

Cabañas was also United States postmaster at Jayuya, as was perfectly known to Torres, and of course in general charge of all postoffice funds and matters. The bill in this case, which was filed June 3, 1919, alleges that Cabañas, while such postmaster, issued money orders in the name of Torres and deposited to his account at Ponce, and that $2,000 of them is represented by one half of an interest-bearing certificate of deposit now in the possession of Torres. The bill also sought to subject the money in the checking account of Torres, some $3,555.40, proceeds of the same class of transactions by Cabañas. This latter was denied in the answer, but at the hearing was conceded, and no objection was made by defendant Torres to an order turning this amount, which had been already garnished, over to the United States.

The real dispute in the case is connected with the half of

the certificate of deposit, which the answer and the cross bill filed June 26 claim to represent $2,000 which Cabañas originally embezzled from defendant Torres at the beginning of the present series of transactions. Cabañas has meantime been convicted and sent to the penitentiary, but the United States has not recovered the total default of some $6,623.20, except partially, as above.

1. The facts as proved seem to develop that Cabañas robbed impartially both of his employees, that is to say, the United States, for whom he acted as postmaster, and defendant Torres, for whom he acted as confidential clerk. The $2,000 fund in question was realized from one or the other source, and the question in the case is whether the plaintiff or defendant has the greater equity thereto.

The contention of the defendant is that originally during the first half of January, 1919, the said Cabañas while postmaster embezzled about $2,000 of the United States funds, and in order to cover up his defalcation Cabañas drew checks upon Torres's account at Ponce aggregating about $2,000, and thereby made up his default to the government. Torres contends that if Cabañas afterwards, as has been proved, drew money orders on the United States for $2,000 and deposited them to Torres's account at Ponce, Cabañas was merely making up a robbery previously committed from that account, and that Torres should not suffer. In other words, the two last robberies balance each other, and that the loss should fall where it was before they were committed, that is to say, that Cabañas was then and is now a defaulter to the United States in the sum of $2,000. There seems to be little dispute as to the facts, including the fact that Cabañas was the confidential representa-

tive of both parties, and the question is, Where should the loss fall under the law?

The immediate case before the court is as to the right of the plaintiff to the half of the certificate of deposit. The plaintiff undoubtedly proves that its funds have gone into that certificate, and the facts equally show that this was done by the confidential agent of the defendant Torres. Under the circumstances Torres cannot be considered a bona fide purchaser for value in any sense of the word although there is no reflection upon his honesty throughout. As between a cestui que trust, trustee, and all parties claiming under him, trust property, no matter how changed, continues to be subject to the trust until some bona fide purchase for value without notice. Pennell v. Deffell, 4 De G. M. & G. 372, 388, 43 Eng. Reprint, 551, 1 Eq. Rep. 579, 23 L. J. Ch. N. S. 115, 18 Jur. 273, 1 Week. Rep. 499. When trust money is deposited in bank, no matter how marked, it belongs to the trust and may be claimed by the cestui que trust. 4 De G. M. & G. 383. So long as trust property can be followed into other property it remains subject to the trust despite the conversion. Frith v. Cartland, 2 Hem. & M. 420, 71 Eng. Reprint, 526, 34 L. J. Ch. N. S. 301, 11 Jur. N. S. 238, 12 L. T. N. S. 175, 13 Week. Rep. 493. Indeed if a man mixes trust funds with his own the whole will be treated as trust property except so far as the man can distinguish what is his own. These principles are not confined to technical trusts, but apply to all fiduciary relations. Knatchbull v. Hallett, L. R. 13 Ch. Div. 696, 49 L. J. Ch. N. S. 415, 42 L. T. N. S. 421, 28 Week. Rep. 732. These are English cases, and English chancery cases stand very high. It was in England that the principles of equity were established in the form in which they

United States v. Cabañas.

prevail in the United States. In fact the principles of equity exist anterior and independent of all Federal legislation, and statutes are either annunciations of those principles or their applications to particular cases. United States v. Detroit Timber & Lumber Co. 200 U. S. 322, 50 L. ed. 499, 26 Sup. Ct. Rep. 282. The rule is established that equity will follow a trust fund through any number of transmutations so long as it can be identified. Where a bank deposit is involved, the title does not depend upon whether the bank knew of the ownership or not. Notice to the bank of the equity is not important. Van Alen v. American Nat. Bank, 52 N. Y. 1. This has been followed all through the history of the United States Supreme Court. Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693.

There is no question, therefore, that the government has an equity in this fund which it is entitled to pursue unless there is some higher equity in the defendant to prevent that result in this particular case.

2. But the defendant Torres claims as affirmative matter in defense, in the nature of a counterclaim or set-off, that Cabañas previously embezzled $2,000 from him, and that the $2,000 which came into his account and is represented by the one half of the certificate of deposit should be considered as a constructive or resulting trust in favor of Torres. The burden of proof in the case of such a trust, whether in favor of the plaintiff or cross complainant, is that proof of all essential facts must be clear, full, convincing, and satisfactory. 39 Cyc. 166. This was so of the plaintiff's case; is it true of the defendant's cross complaint? The equity in question is that of following prop-

XI. Porto Rico.—34.

erty so·long as it can be traced. Upon Torres's theory his co-defendant Cabañas embezzled $2,000 of his money back in 1918 and applied it to a postoffice default, the money being paid to the United States authorities and ultimately getting into the Treasury of the United States. Whether it has ever been paid out of the Treasury it would be impossible to say; for it has been mingled with public funds, and there has been no examination of the Treasury Department, probably because it would be impossible, to ascertain this fact. It would seem that Torres's money, conceding he has proved its conversion, has lost its earmarks ·and cannot be identified. It would be impossible to hold that there is any lien upon the funds in the Treasury of the United States in favor of any private person, no matter how just his claim. It has never been contended that even a wrong by the government to an individual can be righted in any way except by an act of Congress, unless in the cases which may be sued on in the court of claims at Washington by a general act. Even these cannot be set up as a counterclaim in a district court. Especially would this be true of money after it has become part of the funds in the general Treasury of the United States. Torres cannot be said to have made out a case of following his $2,000 to where it can be reached in any sense of the word. What he has made out, if at all, ·is that Cabañas individually owes him $2,000, but that is a personal recourse against his codefendant, and does not affect the plaintiff herein. There can be no lien· on funds in the Federal Treasury. Any other· rule would subvert the whole working of the government. The contention of the cross complainant could arise only if the $2,000 embezzled from him by Cabañas had remained in the vaults·of the postoffice at Jayuya; and this has not only been

shown, but could not have been the case; for in the meantime all funds of that postoffice had been paid to the central depositary at San Juan.

It follows, therefore, that the plaintiff has made out its case, and that the defendant Torres has not made out his cross case; for defendant Torres did not become, by the payment of stolen money into his account at Ponce, a bona fide purchaser for value just because his own agent had embezzled it from someone else in order to help Torres out. Robbing Peter to pay Paul creates neither lien nor equity.

It follows that a decree must be entered in favor of the plaintiff for the $2,000 as prayed in the complaint.

It is so ordered.